**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | **NO. 20-414** |
| | : | |
| MICHAEL PIGFORD | : | |

## <u>MEMORANDUM</u>

KEARNEY, J.                                                                            June 6, 2022

      Michael Pigford pleaded guilty before us last July to being a felon in possession of a firearm. We sentenced him on November 12, 2021. He appeared then, and appears now, to be a relatively healthy young man with hypertension and sore knees. He also appeared then, as he does now, to have obligations to his family. He now pro se moves for compassionate arguing his hypertension and sore knees, risk of contracting COVID in the facility, and family obligations warrant a sentence reduction. We reviewed his medical records and studied our reasons for sentencing less than eight months ago. We entered a sentence mindful of these conditions. We find no extraordinary and compelling reason for compassionate release at this stage nor a reason to change our view confirming our sentence under Congress's sentencing factors. We deny Mr. Pigford's Motion for compassionate release without prejudice.

## I.      Background

      Our grand jury charged Michael Pigford with possession of a firearm by a felon.[1] Mr. Pigford pleaded guilty to the charge.[2] Mr. Pigford admitted to knowingly possessing a firearm unlawfully as part of an agreed recommended sentence during the plea hearing.[3] Mr. Pigford faced a maximum sentence of ten years' imprisonment, a fine not to exceed $250,000, three years of supervised release, and a $100 special assessment.[4] Mr. Pigford and the United States

signed a plea agreement under Federal Rule of Criminal Procedure 11(c) where the United States agreed to recommend a sentence of forty-one months' imprisonment.[5]

We accepted the plea agreement and sentenced Mr. Pigford to forty-one months' imprisonment, followed by three years' supervised release, and a $100 special assessment on November 12, 2021.[6] Mr. Pigford is serving his sentence at the Federal Correctional Institution in Fort Dix.[7] He is now thirty-four years old.[8]

The Bureau of Prisons screened Mr. Pigford at the beginning of his sentence. Mr. Pigford then told the Bureau of an earlier diagnosis of high blood pressure.[9] The Bureau's clinical staff evaluated Mr. Pigford to address his chief complaint of high blood pressure on January 13, 2021.[10] Mr. Pigford had a blood pressure in normal range during a clinical encounter on December 23, 2021.[11] The Bureau prescribed Mr. Pigford medicine to treat his high blood pressure.[12] His current prescription expires on June 21, 2022.[13]

Mr. Pigford suffers from bilateral knee pain.[14] Mr. Pigford first complained of knee pain to Bureau of Prison medical staff on May 19, 2022.[15] Mr. Pigford's medical records show a diagnosis of an unspecified internal derangement of both knees.[16] An x-ray of Mr. Pigford's knees showed no swelling and a minimal reduction in their range of motion because of Mr. Pigford's pain.[17] The Bureau's clinical staff prescribed Mr. Pigford a generic pain relieving medicine, ibuprofen, and he takes it as prescribed.[18] A physician ordered an MRI for Mr. Pigford for mid-June.[19]

The Bureau vaccinated Mr. Pigford with the Moderna COVID-19 vaccine on August 31, 2021.[20] Mr. Pigford's medical records do not include a booster shot.

## II.      Analysis

Mr. Pigford *pro se* moves for compassionate release approximately seven months after his sentencing hearing.[21] Congress allows us to grant compassionate release if Mr. Pigford: (1) "fully exhaust[s] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier;" (2) shows "extraordinary and compelling reasons warrant" a reduction; and (3) shows "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[22] Our Court of Appeals instructs policy statements are "not binding," but "shed[] light on the meaning of extraordinary and compelling reasons."[23] We also must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."[24] Mr. Pigford "bears the burden of proving that extraordinary and compelling reasons exist."[25]

### A.      Mr. Pigford exhausted his administrative remedies.

Congress requires an incarcerated person to exhaust his administrative remedies before seeking compassionate release from the Court.[26] Our Court of Appeals requires strict compliance with the exhaustion requirement.[27] Mr. Pigford reports he "went threw [*sic*] the jail first. [T]hey denied me just like they do everybody."[28] The United States does not argue failure to exhaust. We accept Mr. Pigford's representation at this stage.

### B.      Mr. Pigford fails to show extraordinary and compelling reasons allowing us to reduce his sentence.

Mr. Pigford cites four reasons for early release: 1) high blood pressure (hypertension), 2) knee pain, 3) risk of contracting COVID-19, and 4) his newborn child and wife need his help.[29] The United States opposes his early compassionate release.[30] The United States argues Mr. Pigford does not meet extraordinary and compelling reasons for relief and the sentencing factors

weigh against releasing Mr. Pigford.[31] We agree with the United States because Mr. Pigford does not meet extraordinary and compelling reasons for early compassionate release.

### *Mr. Pigford's high blood pressure alone is not sufficient.*

Mr. Pigford argues his high blood pressure constitutes an extraordinary and compelling reason.[32] The United States argues medicine manages Mr. Pigford's condition and Mr. Pigford does not show he is unable to provide self-care in the Facility.[33] We find this condition does not constitute an extraordinary or compelling reason for release because medicine moderates it.

Our colleagues find hypertension, even coupled with the increased risk of contracting COVID-19 and other medical conditions, is not an extraordinary or compelling reason. Judge Robreno held hypertension moderated by medication "is not a serious enough condition to favor finding extraordinary and compelling reasons."[34] Judge Bartle did not find extraordinary and compelling reason for hypertension when prescribed medication.[35] Judge Rambo found hypertension and overweight status did not rise to the level of extraordinary and compelling circumstances.[36] Judge Schmehl found hypertension and mild obesity coupled with the risk of contracting COVID-19 did not constitute an extraordinary and compelling reason.[37]

Mr. Pigford does not show his hypertension is an extraordinary and compelling reason for compassionate release. Mr. Pigford is a relatively healthy, thirty-four-year-old man. Mr. Pigford does not describe the severity nor treatment of his high blood pressure though his medical records indicate he takes medication and he has received normal blood pressure readings at his medical visits.[38] Mr. Pigford is not obese and does not suffer from other underlying health conditions.[39] Mr. Pigford's medical records reflect he has not contracted COVID-19 while incarcerated and the Bureau vaccinated him.[40] His hypertension does not present an extraordinary and compelling reason for early release.

***Mr. Pigford's painful knees are not a basis for compassionate release.***

Mr. Pigford claims his "knees are now mes[sed] up I can't keep them bent for too long or they will hurt nor can I stand for too long or they will hurt."[41] Mr. Pigford concedes his x-rays showed "nothing broken or out of place."[42] The United States argues medication manages Mr. Pigford's condition and Mr. Pigford does not show he is unable to provide self-care in the Facility.[43] Mr. Pigford's knee injury does not constitute an extraordinary or compelling reason for release.

No extraordinary and compelling reason exists for release when the Facility monitors and manages an incarcerated person's medical conditions with medication. Chronic conditions managed in a Facility are not a sufficient basis for compassionate release.[44] Chief Judge Sánchez denied compassionate release for an incarcerated person who suffered from osteoarthritis of the knees when the person used Tylenol to manage the pain.[45]  Chief Judge Sánchez found no extraordinary and compelling circumstance when medical conditions "have and continue to be under control and well-managed by the prison's health unit."[46] Judge Drozd did not find an extraordinary and compelling reason for release when an incarcerated person had swelling in their left knee limiting their range of motion.[47]

Ibuprofen as prescribed manages Mr. Pigford's knee pain.[48] While Mr. Pigford claims the ibuprofen does not help relieve his pain, the x-ray did not show swelling.[49] During Mr. Pigford's most recent clinical encounter, the exam comments note "[t]he bilateral knees are not swollen. Their ROMS [range of motion] are mildly reduced due to pain."[50] The medical provider ordered an MRI for Mr. Pigford's knees to address his complaint of existing pain.[51] The Facility manages Mr. Pigford's knee pain and this injury does not amount to an extraordinary and compelling reason for release.

***Risk of COVID-19 alone is not a basis for compassionate release.***

Mr. Pigford claims an increased risk of contracting COVID-19 in the vicinity of unvaccinated incarcerated persons.[52] The United States argues Mr. Pigford's vaccination coupled with the Bureau's response to the COVID-19 pandemic weighs against finding an extraordinary and compelling reason. We find Mr. Pigford's claimed risk of contracting COVID-19 does not constitute an extraordinary and compelling reason for release.

It is by now well-settled "the existence of COVID-19 cannot alone justify compassionate release."[53] It is also well-settled COVID-19 vaccinations "are highly effective at preventing infection and … at reducing the severity of symptoms" from COVID-19 and its presently known variants.[54] An increased risk of contracting COVID-19 may constitute an extraordinary and compelling reason for release only if a movant shows "they are particularly susceptible to serious illness or death" usually because of one or more underlying medical conditions.[55] This requires an incarcerated person to show "he is unable to receive or benefit from a vaccine."[56] The availability of vaccines throughout the Bureau of Prisons means compassionate release motions based on COVID-19 "generally lack merit."[57] "[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."[58]

Mr. Pigford does not show the risk of contracting COVID-19 is an extraordinary and compelling reason for release. Mr. Pigford is vaccinated. He does not show he is at increased risk of complications should he contract COVID-19. Mr. Pigford claims to struggle with knee pain and high blood pressure.[59] But he does not explain how these purported comorbidities displace the effectiveness of his vaccine. Neither does he explain how the interaction between vaccinated individuals, like Mr. Pigford, and unvaccinated individuals places Mr. Pigford at an increased

risk of contracting COVID-19.[60] "[T]he mere existence of COVID-19 in society and the possibility that it may spread…cannot independently justify compassionate release."[61] Mr. Pigford is one of the "vast majority" of incarcerated persons for whom COVID-19 does not constitute an extraordinary and compelling reason for release.[62]

### *Mr. Pigford's family needs are not a basis for compassionate release.*

Mr. Pigford also seeks early release because "[his] family needs [him] bad" and his wife needs his help.[63] Mr. Pigford does not elaborate on why his family needs his help nor provides support for a claim regarding he is the sole caregiver of a family member. The United States argues Mr. Pigford's circumstances do not qualify as a basis for compassionate release.[64] Mr. Pigford's family care does not constitute an extraordinary and compelling reason for release.

The Sentencing Commission policy statement offers two circumstances where a petitioner may present an extraordinary and compelling reason for release based on family needs (1) "death or incapacitation of the caregiver of the defendant's minor child or minor children," or (2) "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner."[65] Courts have found no extraordinary and compelling reason for release when the incarcerated person does not show incapacitation of a spouse or child or the incarcerated person is the only caregiver for a spouse. Judge Bartle denied compassionate release when a petitioner fails to show their spouse is incapacitated or no other person is available to care for their family.[66] Judge Pratter acknowledged the difficulties placed on the family because of confinement but found it does not provide an extraordinary basis for release.[67] Judge Kenney in *Rooks* found no extraordinary and compelling reason when the incarcerated person did not establish themselves as the sole caregiver of their child.[68]

Mr. Pigford has not shown his wife is incapacitated or Mr. Pigford would be the sole caregiver of a family member. Mr. Pigford only states "my family needs me bad we all we got."[69] We are not unsympathetic to the burden incarceration places on families. But as Judge Pratter found, this burden is insufficient to show an extraordinary and compelling reason for release. Mr. Pigford fails to show any reason beyond the normal burden warranting release. Mr. Pigford has not shown an extraordinary and compelling reason for release.

### C.     The sentencing factors do not weigh in favor of a reduction of his sentence.

Congress allows us to reduce a sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable."[70] We "should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence."[71] The factors include reflecting the seriousness of the offense, affording deterrence to criminal conduct, protecting the public from further crimes, and providing the defendant with needed medical care.[72]

Mr. Pigford offers five reasons: 1) trying to obtain good time credits, 2) served sixty percent of his sentence already, 3) moving away from Philadelphia, 4)  he has a job at a meat factory waiting for him upon release, and 5) he has a treatment group waiting for him upon release.[73] We commend Mr. Pigford for his efforts in rehabilitating himself while incarcerated. We appreciate Mr. Pigford's forward-looking efforts to prepare for life's success upon release. But these reasons do not overcome the seriousness of his crime, promote the interest of justice or deterrence, and offer no basis to change our reasoned sentence from November 2021.

We considered the sentencing factors at the time of sentencing less than eight months ago. We do not find Mr. Pigford offers grounds under the sentencing factors now weighing in favor of reducing Mr. Pigford's sentence.[74]

**III.   Conclusion**

Mr. Pigford does not present an extraordinary and compelling reason for compassionate release. We deny Mr. Pigford's motion for compassionate release without prejudice.

---

[1] ECF Doc. No. 1.

[2] ECF Doc. No 60; ECF Doc. No. 62, Transcript (Tr.), July 21, 2021, 49:12–50:5.

[3] ECF Doc. No 60; Tr., July 21, 2021, 49:12–50:5.

[4] ECF Doc. No 60 ¶ 3; Tr., July 21, 2021, 23:9–17.

[5] ECF Doc. No 60 ¶ 5; Tr., July 21, 2021, 35:2–10.

[6] ECF Doc. No. 70.

[7] ECF Doc. No. 73 at 68; *see also* Federal Bureau of Prisons Inmate Locator, Michael Pigord, Inmate number 18927-5909, https://www.bop.gov/inmateloc/ (indicating Mr. Pigford is presently housed at Fort Dix with a release date of August 19, 2021).

[8] ECF Doc. No. 73-1 at 1.

[9] ECF Doc. No. 73 at 26, 28, 62.

[10] *Id.* at 16.

[11] ECF Doc. No. 73-1 at 6.

[12] *Id.* at 36, 66.

[13] *Id.*

[14] *Id.* at 1.

[15] *Id.*; ECF Doc. No. 73 at 62 (indicating diagnosis date of May 19, 2022).

[16] ECF Doc. No. 73 at 62.

[17] ECF Doc. No. 73-1 at 1, 77.

[18] *Id.* at 36.

[19] *Id.* at 2–3.

[20] *Id.* at 92–93 (indicating first dose received July 30, 2021 and second dose on August 31, 2021).

[21] ECF Doc. No. 71.

[22] 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) ("[A] a prisoner's motion may be granted if the court finds that the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable.") (further citation omitted).

[23] *Andrews*, 12 F.4th at 259–60.

[24] 18 U.S.C. § 3582(c)(1)(A)(i).

[25] *United States v. Smith*, No. 09-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020).

[26] *See supra* n.32.

[27] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

[28] ECF Doc. No. 71 at 2.

[29] *Id.*

[30] ECF Doc. No. 76.

[31] *Id.* at 13–19.

[32] ECF Doc. No. 71 at 1.

[33] ECF Doc. No. 76 at 15.

[34] *United States v. Andrews*, 480 F.Supp.3d 669, 686 (E.D. Pa. 2020).

[35] *United States v. Nesbitt*, No. 09-181, 2020 WL 3412577, at *2–3 (E.D. Pa. June 22, 2020).

[36] *United States v. Rowe*, No. 16--210, 2021 WL 4149188, at *1 (M.D. Pa. Sept. 13, 2021).

[37] *United States v. Perry*, No. 15-383, 2022 WL 1136685, at *3 (E.D. Pa. Apr. 18, 2022).

[38] ECF Doc. No. 73-1 at 6, 66.

[39] ECF Doc. No. 73 at 63.

[40] *Id.*

[41] ECF Doc. No. 71 at 1.

[42] *Id.*

[43] ECF Doc. No. 76 at 15.

[44] *United States v. Weidenhamer*, No. 16-1072, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019).

[45] *United States v. Chatman*, No. 08-659, 2022 WL 489698, at *5 (E.D. Pa. Feb. 16, 2022).

[46] *United States v. Maldonado*, No. 17-138, 2022 WL 685539, at *2 (E.D. Pa. Mar. 8, 2022); *United States v. Millhouse*, No. 06-285, 2022 WL 672684, at *2 (E.D. Pa Mar. 7, 2022).

[47] *United States v. Ayon-Nunez*, No. 16-130, 2020 WL 704785, at *1–3 (E.D. Cal. Feb. 12, 2020).

[48] ECF Doc. No. 73-1 at 36.

[49] ECF Doc. No. 71 at 1; ECF Doc. No. 73 at 1, 77.

[50] ECF Doc. No. 73-1 at 2.

[51] *Id.*

[52] ECF Doc. No. 71 at 1.

[53] *United States v. Singh*, 525 F. Supp. 3d 543, 546 (M.D. Pa. 2021).

[54] *United States v. Johnson*, No. 18-578-1, 2022 WL 901468, at *4 (D.N.J. Mar. 28, 2022); *see also United States v. Gatson*, No. 13-705, 2022 WL 1269785, at *2 (D.N.J. Apr. 28, 2022) (vaccines effective against "Delta and other variants"); *United States v. Hannigan*, No. 19-373, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) ("Even in the era of the highly transmissible omicron variant, Moderna vaccination and booster shot is highly effective against severe illness.") (and compiling cases).

[55] *Singh*, 525 F. Supp. 3d at 546.

[56] *United States v. Broadfield,* 5 F.4th 801, 803 (7th Cir. 2021).

[57] *United States v. Reed*, No. 18-78, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021).

[58] *Broadfield*, 5 F.4th at 803.

[59] ECF Doc. No. 71 at 1.

[60] *Id.*

[61] *Raia*, 954 F.3d at 597.

[62] *Broadfield*, 5 F.4th at 803; *see also*, *United States v. Hannigan*, No. 19-373, 2022 WL 815499 at *15 (E.D. Pa. Mar. 17, 2022) (holding FDA-approved vaccination against COVID-19 lessens the risk of serious illness or death from COVID-19 such that the threat of contraction does not constitute an extraordinary and compelling reason for compassionate release).

[63] ECF Doc. No. 71 at 1–2.

[64] ECF Doc. No. 76 at 19.

[65] U.S. Sent'g Guidelines, § 1B1.13, Application Note 1(C).

[66] *United States v. Cherry*,  No. 19-122-1, 2022 WL 1557777, at *3 (E.D. Pa. May 17, 2022).

[67] *United States v. Adens*, No. 12-616-2, 2022 WL 1226965, at *4 (E.D. Pa. Apr. 26, 2022) ("While the Court acknowledges the difficulties that Mr. Adens's confinement has undoubtedly imposed on his family, this is a result of his own criminal activity and does not provide a unique or "extraordinary" basis for release.").

[68] *United States v. Rooks*, Nos. 21-38 & 21-43, 2022 WL 267899, *6 (E.D. Pa. Jan. 28, 2022).

[69] ECF Doc. No. 71 at 2.

[70] 18 U.S.C. § 3582(c)(1)(A)(i).

[71] *United States v. Iezzi*, No. 17-157, 2021 WL 5832767, at *6 (W.D. Pa. Dec. 9, 2021) (further citation omitted).

[72] "The court, in determining the particular sentence to be imposed shall consider-- … (2) the need for the sentenced imposed-- (A) to reflect the seriousness of the offense, to promote respect for the law, and to prove punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant' and (D) to

provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner…" 18 U.S.C. § 3553(a)(2)(A)-(D).

[73] ECF Doc. No. 71 at 1-2.

[74] 18 U.S.C. § 3553(a)(2)(A)-(D); *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) ("Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.").