IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO.  20-414 |
| | : | |
| MICHAEL PIGFORD | : | |

## MEMORANDUM

**KEARNEY, J.**                                                          **February 28, 2023**

We sentenced Michael Pigford to the lowest end of the Sentencing Commission's Guidelines range in November 2021 after he admitted guilt to possessing a firearm as a convicted felon. Mr. Pigford moved for compassionate release in the summer of 2022 citing his health conditions and the need to take care of his family. We denied his motion then finding no extraordinary and compelling reasons for compassionate release. Mr. Pigford now returns *pro se* again asking us to release him before completing his low-end sentence again arguing his medical records and family obligations provide extraordinary and compelling reasons for release. We sentenced Mr. Pigford in November 2021 mindful of his medical conditions. He again offers no extraordinary and compelling reasons for his compassionate release. He also offers no reason for us to change our view under Congress' sentencing factors. We deny Mr. Pigford's second Motion for compassionate release.

## I.    Background

The Philadelphia Police Department responded to an anonymous complaint of drug-trafficking on March 27, 2020 at an intersection in Philadelphia.[1] Police officers arrived at the intersection and observed Michael Pigford standing in the street talking to a woman in a car.[2] A

police officer approach Mr. Pigford and he fled.[3] A chase ensued and police noticed Mr. Pigford had a gun and ordered him to drop the gun and stop running, but he refused.[4] Mr. Pigford then tripped and fell, and during the fall tossed the gun and the police apprehended him.[5] The officers checked Mr. Pigford on the law enforcement database. The search confirmed Mr. Pigford could not lawfully possess a firearm as a convicted felon. The police arrested him.[6] Mr. Pigford plead guilty to possessing a firearm as a convicted felon on July 14, 2021.[7]

We sentenced Mr. Pigford to forty-one months' incarceration on November 12, 2021.[8] This sentence represented the lowest end of the guidelines range. The Bureau of Prisons assigned Mr. Pigford to the Federal Correctional Institution in Ray Brook, New York.[9] He is now thirty-five years old.[10]

Mr. Pigford *pro se* moved for compassionate release six months into his sentence on May 19, 2022.[11] Mr. Pigford then cited four reasons for early release: (1) high blood pressure (hypertension); (2) injured knees; (3) risk of contracting COVID-19; and (4) his newborn child and wife need his help.[12] We reviewed Mr. Pigford's medical conditions in great detail and acknowledged he presented as a relatively healthy, thirty-four-year-old man with no underlying health conditions and no history of obesity. We denied Mr. Pigford's motion for compassionate release on June 6, 2022 without prejudice finding none of his reasons constituted an extraordinary and compelling reason for release given: (1) his high blood pressure is moderated with medicine; (2) his knee pain is monitored at the Facility and managed with Ibuprofen; (3) he is vaccinated against COVID-19; and (4) his family care does not qualify as a basis for compassionate release.[13]

Mr. Pigford suffers from bilateral knee pain.[14] Updated medical records show on December 6, 2022, Mr. Pigford visited the Bureau of Prisons health services center to refill his Naproxen (Aleve) prescription to manage his knee pain.[15] The provider did not renew Mr. Pigford's Voltaren

NF (anti-inflammatory) prescription as Mr. Pigford indicated "[t]hat stuff makes my knees burn! It really doesn't help the pain."[16] Mr. Pigford told the provider "Naproxen doesn't do much either."[17] He also takes Ibuprofen for the pain.[18] Mr. Pigford, three days later, underwent an MRI of his left knee.[19] The MRI showed Mr. Pigford has significant inflammation in his left knee defined as "[s]evere proximal patellar tendinosis with low-grade tearing and soft tissue edema."[20] Mr. Pigford visited the Bureau of Prisons' health services center following his MRI and the provider noted he returned with no recommendation for additional consultations and did not return with a new prescription or change in medication.[21] The provider also noted Mr. Pigford "Appears Well, Alert and Oriented[.]"[22] Mr. Pigford claims neither the Naproxen nor Ibuprofen "work" and his "knee brace does not help" and "walking around [ ] triggers more pain."[23] He contends the Bureau informed him he will not be able to see a knee specialist "in the immediate future" because he will be eligible for home confinement in April 2023.[24]

Mr. Pigford told the Bureau of Prisons at the beginning of his sentence of an earlier diagnosis of high blood pressure.[25] A radiologist confirmed the diagnosis on March 17, 2021.[26] The Bureau continues to prescribe Mr. Pigford medicine to treat his high blood pressure.[27]

Mr. Pigford also claims his health is further complicated by the most recent COVID-19 and flu outbreaks.[28] As we explained when we evaluated Mr. Pigford's first Motion for compassionate release, the Bureau vaccinated Mr. Pigford with the Moderna COVID-19 vaccine on August 31, 2021.[29]

Mr. Pigford has taken instructive courses while incarcerated.[30] He has taken classes related to money management and parenting.[31] But, he has also committed seven disciplinary infractions while incarcerated between July 1, 2021 and April 25, 2022 relating to, among other things, drug and alcohol use, phone abuse, and refusing to obey an order.[32]

Mr. Pigford has a wife and child who he plans to care for upon release.[33] He has an apartment and a job at an Amazon warehouse waiting for him after he is released.[34]

## II.   Analysis

Mr. Pigford *pro se* moves for compassionate release about eight months after we denied his first Motion for compassionate release and approximately fourteen months after his sentencing hearing.[35] He mostly reiterates his medical and family-based circumstances as extraordinary and compelling reasons for release.[36] Mr. Pigford is nearing the end of his sentence. His minimum release date is August 19, 2023, and he may be eligible for home confinement beginning April 18, 2023.[37]

Mr. Pigford argues extraordinary and compelling reasons for compassionate release citing: (1) his constant knee pain; (2) his high blood pressure; (3) his increased risk for contracting COVID-19 and the flu; and (4) his wife and child require a caretaker.[38] The only change in Mr. Pigford's health from when we considered Mr. Pigford's first Motion for compassionate release is he received an MRI of his left knee in December 2022, which showed significant inflammation and swelling.[39]

Congress allows us to grant compassionate release if Mr. Pigford: (1) "fully exhaust[s] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier;" (2) shows "extraordinary and compelling reasons warrant" a reduction; and (3) shows "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[40] But we are also guided by the United States Sentencing Commission's recent proposed amendments expanding what constitutes extraordinary and compelling reasons warranting sentencing modification.[41] Our Court of Appeals instructs

4

policy statements are "not binding," but "shed[] light on the meaning of extraordinary and compelling reasons."[42] We also must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."[43] Mr. Pigford "bears the burden of proving that extraordinary and compelling reasons exist."[44]

### A. Mr. Pigford exhausted his administrative remedies.

Congress requires Mr. Pigford exhaust his administrative remedies before seeking compassionate release from the Court.[45] Our Court of Appeals requires strict compliance with the exhaustion requirement.[46] The purpose of the exhaustion requirement is to put the Bureau of Prisons on notice of the grounds for compassionate release and "provide the Bureau [of Prisons] with the information necessary to move for release on a defendant's behalf."[47]

Mr. Pigford contends he "requested treatment and better medication" but the Bureau will not give it to him because his release day is approaching "or they just don't want to do their job[.]"[48] He reports "he went threw [sic] the administrative process" and Ray Brook denied the claim.[49] We accept his representation at this stage.

### B. Mr. Pigford fails to show extraordinary and compelling reasons allowing us to reduce his sentence.

Mr. Pigford seeks compassionate release because of: (1) left knee pain and accompanying medical issues; (2) high blood pressure; (3) the most recent flu and COVID-19 outbreak; and (4) his family needs him to take care of them.[50] Mr. Pigford asks we either reduce his term of imprisonment or transfer him to home confinement.[51] The United States argues Mr. Pigford for the second time fails to present extraordinary and compelling reasons for compassionate release.[52] The United States contends Mr. Pigford can appeal to higher authorities within the Bureau of Prisons if dissatisfied with the extent and pace of his medical care at the Facility.[53] We agree with

the United States. Mr. Pigford again fails to demonstrate extraordinary and compelling reasons for compassionate release before serving the lowest end of the guidelines range sentence.

### 1. Mr. Pigford's knee pain is not a basis for compassionate release.

Mr. Pigford claims he has knee pain which "constantly bother[s]" him and he is "racked with pain."[54] He contends the pain medicine the Bureau prescribes him does not help.[55] He contends he must see a knee specialist.[56] But, according to Mr. Pigford, the medical staff informed him he will not be able to see an outside knee specialist in the immediate future because he is scheduled to be released in April 2023.[57] The United States argues Mr. Pigford continues to receive pain medication and has not requested any assistive device or other aid to manage his knee pain.[58] The United States contends if Mr. Pigford is dissatisfied with the extent and pace of his care, he should appeal to higher authorities within the Bureau, but his complaint is not a proper basis for compassionate release.[59]

No extraordinary and compelling reason exists for release when the Facility monitors and manages an incarcerated person's medical conditions with medication.[60] Chronic conditions managed in a Facility are not a sufficient basis for compassionate release.[61] For example, in *United States v. Weidenhamer*, Judge Silver found although an incarcerated individual may believe she is not receiving adequate medical care her "disagreement with the type and amount of medical treatment provided by the Bureau of Prisons is not enough to establish her conditions cannot be accommodated while she is incarcerated."[62] In *Weidenhamer*, the incarcerated individual received medical care, including doctor's visits and prescription medicines.[63]

Mr. Pigford, like the incarcerated individual in *Weidenhamer*, takes Ibuprofen and Naproxen to manage his knee pain.[64] He also took Voltaren NF, an anti-inflammatory, to combat the swelling but the Facility did not renew the prescription after Mr. Pigford indicated "[t]hat stuff

makes my knees burn! It really doesn't help the pain."[65] Mr. Pigford claims neither the Ibuprofen nor the Naproxen relieve his pain.[66] And although Mr. Pigford received an MRI of his knee on December 9, 2022, which showed swelling of his knee, the physician administering the MRI did not recommend a new prescription or change in medication.[67]

Although Mr. Pigford disagrees with the type of care the Bureau provides him – as he claims the Bureau must send him to an outside knee specialist – his medical complaints are not enough to establish his knee injury cannot be accommodated while he is incarcerated. Mr. Pigford is not automatically eligible for compassionate release even if the Facility is providing inadequate medical care.[68] We are persuaded compassionate release is not meant as a work around to address Mr. Pigford's alleged inadequate medical treatment regarding his knee injury.[69] "[I]f inadequate medical care is an issue," there are "available administrative means to address [those] issues."[70] Or, Mr. Pigford could possibly bring constitutional claims based on inadequate medical care.[71]

But when faced with Mr. Pigford's Motion for compassionate release we ask whether Mr. Pigford is "suffering from a serious . . . medical condition . . . that substantially diminishes" his ability "to provide self-care within the environment of a correctional facility."[72] The Bureau of Prisons continues to manage Mr. Pigford's knee pain and this injury does not amount to an extraordinary and compelling reason for release.

### 2. Mr. Pigford's high blood pressure is not an extraordinary and compelling reason for early release.

Mr. Pigford for the second time argues his high blood pressure constitutes an extraordinary and compelling reason for release.[73] We denied this request eight months ago. Mr. Pigford does not describe his high blood pressure beyond claiming he is prescribed medication which the medical staff administers daily.[74] We are faced with similar facts Judge Robreno confronted in

*United States v. Andrews* where he found high blood pressure treated with medicine "is not a serious enough condition to favor finding extraordinary and compelling reasons."[75]

Mr. Pigford does not describe the severity nor treatment of his high blood pressure besides indicating he takes medication daily.[76] We find this condition does not constitute an extraordinary and compelling reason for release because his medicine continues to moderate his blood pressure.

### 3. The risk of contracting the flu or COVID-19 is not a basis for compassionate release.

Mr. Pigford argues he faces an increased risk of serious complications if he contracts COVID-19 or the flu because of his knee injury and high blood pressure.[77] Mr. Pigford's fear, even with his claimed risk, is not an extraordinary and compelling reason for release.

As we explained when Mr. Pigford raised this claim in his first Motion for compassionate release, it is now well-settled "the existence of COVID-19 cannot alone justify compassionate release."[78] The "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."[79] It is also well-settled COVID-19 vaccinations "are highly effective at preventing infection and . . . at reducing the severity of symptoms" from COVID-19 and its presently known variants.[80] An increased risk of contracting COVID-19 may constitute an extraordinary and compelling reason for release only if a movant shows "they are particularly susceptible to serious illness or death" usually because of one or more underlying medical conditions.[81] "[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."[82] The mere existence of COVID-19 or the flu "in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"[83]

Mr. Pigford again does not meet his burden to show he is at an increased risk of severe

8

complications from COVID-19 or the flu. Mr. Pigford received the COVID-19 vaccine. We have no records indicating Mr. Pigford received a flu shot. But Mr. Pigford's medical records confirm the Facility is actively prescribing proper medication for his high blood pressure and knee injury. Mr. Pigford offers no basis to find extraordinary and compelling reasons for early release other than the general health risk to every federal prisoner as a result of COVID-19 or the flu and its strain on the prison system. Mr. Pigford is one of "the vast majority of prisoners the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."[84]

### 4. Mr. Pigford's family needs are not a basis for compassionate release.

Mr. Pigford also seeks early release, as he did in his first Motion for compassionate release, because he "must get back to [his wife and child]" to "fulfil [his] obligations to take care of them."[85] Mr. Pigford again fails to explain why his family needs his help or provide any support for a claim he is the sole caregiver of a family member.

The Sentencing Commission advises extraordinary and compelling reasons to reduce a sentence exist in certain family circumstances, including: (1) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children[,]" or (2) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the *only* available caregiver for the spouse or registered partner."[86] While not binding, we consider this policy statement to interpret the meaning of "extraordinary and compelling" in these circumstances.[87] By its plain text, the policy statement only extends to caring for the incarcerated person's minor children or an incapacitated spouse when the incarcerated person is the only one available to provide the care.[88] Some judges have found an incarcerated person may establish "extraordinary and compelling"

9

reasons to reduce his sentence by showing he is the *only* caregiver available for an incapacitated close family member.[89]

Mr. Pigford fails to establish his wife is incapacitated or he is the sole caregiver of a family member. Mr. Pigford only claims he "must get back" to his family "to take care of them."[90] Mr. Pigford does not demonstrate a familial need fitting into one of the two categories suggested by the Sentencing Commission. Mr. Pigford has not shown an extraordinary and compelling reason for release.

### C.  Congress's section 3553 factors counsel against release.

Congress allows us to reduce a sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable."[91] We "should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence."[92] The factors include reflecting the seriousness of the offense, affording deterrence to criminal conduct, protecting the public from further crimes, and providing the defendant with needed medical care.[93]

Mr. Pigford provides: (1) he has enrolled in numerous programs at the Facility including money management and parenting courses; (2) he has a job at an Amazon warehouse waiting for him upon his release; and (3) he has strong familial and community ties.[94]

We considered the sentencing factors at the time of sentencing Mr. Pigford, and again eight months ago when addressing his first Motion for compassionate release.[95] Mr. Pigford plead guilty to the serious crime of possessing a firearm as a convicted felon. We again appreciate Mr. Pigford's forward-looking efforts to prepare for life's success upon release. We also understand he may be closer to release.  But these reasons do not overcome the seriousness of his crime, promote the interest of justice or deterrence, and offer no basis to change our reasoned sentence from November

10

2021. We do not find Mr. Pigford offers grounds under the sentencing factors now weighing in favor of reducing his sentence.[96]

We last address Mr. Pigford's request for home confinement. We lack authority to move Mr. Pigford to home confinement because the Federal Bureau of Prisons has sole authority to make housing decisions for federal inmates.[97]  Mr. Pigford has not shown extraordinary and compelling reasons allowing us to reduce his sentence. We deny his request for home confinement because we lack the authority and he has not shown grounds to reduce his sentence.

## III.    Conclusion

We considered Mr. Pigford's medical conditions and family needs when denying his first Motion for compassionate release eight months ago. We again studied his medical conditions and family needs today. We again are not unsympathetic to Mr. Pigford's medical conditions. But Mr. Pigford does not present an extraordinary and compelling reason for compassionate release. We deny Mr. Pigford's Motion for compassionate release without prejudice.

---

[1] ECF Doc. No. 62 at 44–46.

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] ECF Doc. No. 60.

[8] ECF Doc. No. 70.

[9] ECF Doc. No. 82 at 1.

[10] ECF Doc. No. 86 at 2.

[11] ECF Doc. No. 71.

[12] *Id.*

[13] ECF Doc. No. 80.

[14] ECF Doc. No. 82 at 5; ECF Doc. No. 86 at 11–12.

[15] ECF Doc. No. 86 at 11–12.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 18.

[19] ECF Doc. No. 82 at 5–6.

[20] *Id.*

[21] ECF Doc. No. 86 at 9.

[22] *Id.*

[23] ECF Doc. No. 82 at 2.

[24] *Id.* at 1–2.

[25] ECF Doc. No. 73 at 28.

[26] *Id.* at 91.

[27] ECF Doc. No. 86 at 20.

[28] ECF Doc. No. 82 at 1.

[29] ECF Doc. No. 86 at 65–66.

[30] ECF Doc. No. 82 at 2.

[31] *Id.*

[32] ECF Doc. No. 85 at 2.

[33] ECF Doc. No. 82 at 2.

[34] *Id.*

[35] *Id.* at 1–2.

[36] *Id.*

[37] ECF Doc. No. 85 at 2.

[38] ECF Doc. No. 82.

[39] *Id.* at 5–6.

[40] 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021) ("[A] prisoner's motion may be granted if the court finds that the sentence reduction is (1) warranted by 'extraordinary and compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable.") (further citation omitted).

[41] The United States Sentencing Commission proposed new amendments for reductions in term of imprisonment under 18 U.S.C. § 3582(c)(1)(A) on January 12, 2023. The proposed changes relevant to Mr. Pigford would expand the definition of extraordinary and compelling reasons to include incarcerated citizens suffering from a medical condition requiring long-term or specialized treatment not being provided in a timely or adequate manner and unmitigable risk of suffering severe medical complications from exposure to ongoing outbreaks of infectious diseases and public health emergencies. Mr. Pigford would likely fall into both new categories. Other proposed changes include expansion of the family circumstances category, additions of "victim of assault" and "changes in law" categories, and rephrasing of the "Other Circumstances" catch-all provision. *See* Preliminary "Reader-Friendly" Version of Proposed Amendments (ussc.gov) at 6–8 (last visited Feb. 28, 2023).

[42] *Andrews*, 12 F.4th at 259–60.

[43] 18 U.S.C. § 3582(c)(1)(A).

[44] *United States v. Smith*, No. 09-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020).

[45] 18 U.S.C. § 3582(c)(1)(A).

[46] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

[47] *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021); *see also United States v. Melendez*, No. 18-304, 2022 WL 3588022, at *2 (E.D. Pa. Aug. 22, 2022).

[48] ECF Doc. No. 89 at 1.

[49] *Id.* at 2.

[50] ECF Doc. No. 82.

[51] *Id.* at 2.

13

[52] ECF Doc. No. 85.

[53] *Id*. at 4.

[54] ECF Doc. No. 82 at 1.

[55] *Id*. at 1–2.

[56] *Id*. at 1.

[57] *Id*.

[58] ECF Doc. No. 85 at 3.

[59] *Id*. at 4–5.

[60] *United States v. Weidenhamer*, No. 16-1072, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019).

[61] *Id*.

[62] *Id.* at *5, n.3.

[63] *Id*.

[64] ECF Doc. No. 86 at 11, 18.

[65] *Id*. at 12.

[66] ECF Doc. No. 82 at 1–2.

[67] *Id*. at 5–6; ECF Doc. No. 86 at 9.

[68] *United States v. Miller*, No. 15-471, 2021 WL 2711728, at *4 (N.D. Cal. July 1, 2021).

[69] *Id.*

[70] *United States v. Williams*, No. 18-132, 2021 WL 2400860, at *4 (W.D. Wash June 11, 2021).

[71] *Miller*, 2021 WL 2711728, at *4.

[72] *Id.* (quoting Sent'g Guidelines Manual § 1B1.13 cmt. n.1).

[73] ECF Doc. No. 82.

[74] *Id*. at 1.

[75] *United States v. Andrews*, 480 F.Supp.3d 669, 686 (E.D. Pa. 2020), *aff'd*, 12 F.4th 255 (3d Cir. 2021).

14

[76] ECF Doc. No. 82 at 1.

[77] *Id.*

[78] *United States v. Singh*, 525 F. Supp. 3d 543, 546 (M.D. Pa. 2021).

[79] *United States v. Roeder*, 807 F. App'x 157, 161, n.16 (3d Cir. 2020).

[80] *United States v. Johnson*, No. 18-578-1, 2022 WL 901468, at *4 (D.N.J. Mar. 28, 2022); *see also United States v. Gatson*, No. 13-705, 2022 WL 1269785, at *2 (D.N.J. Apr. 28, 2022) (vaccines effective against "Delta and other variants"); *United States v. Hannigan*, No. 19-373, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) ("Even in the era of the highly transmissible omicron variant, Moderna vaccination and booster shot is highly effective against severe illness.") (and compiling cases).

[81] *Singh*, 525 F. Supp. at 543.

[82] *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).

[83] *Raia*, 954 F.3d at 597.

[84] *Broadfield*, 5 F.4th at 803.

[85] ECF Doc. No. 82 at 2.

[86] Sent'g Guidelines Manual § 1B1.13 cmt. n.1 (emphasis added).

[87] *United States v. Briggs*, No. 96-336-1, 2022 WL 159601, at *2 (E.D. Pa. Jan. 18, 2022) ("It is now clear that the existing Sentencing Commission Policy Statement for § 3582(c)(1)(A) contained in the Commentary to U.S.S.G. § 1B1.13, is not binding on the courts where compassionate release motions are made by the defendants themselves. Nevertheless, this Policy Statement 'still sheds light on the meaning of extraordinary and compelling reasons,' given that 'Congress legislates against the backdrop of existing law.'" Hence, while the courts are free to interpret the meaning of extraordinary and compelling' for themselves, the existing Policy Statement may properly be considered for guidance in this inquiry.") (internal quotations omitted).

[88] *Id.* ("Although Briggs avers that his mother suffers from 'serious health conditions' which purportedly place her in imminent threat of demise without a primary caregiver such that she needs 'her son's assistance for day to day living,' a parent is neither a child nor a spouse."); *United States v. Ellsworth-Daway*, No. 17-506, 2021 WL 2823081, at *2 (E.D. Pa. July 7, 2021) ("There is no provision in the guidelines for an inmate who claims that he should be released as the only available caregiver for an ailing parent. Courts have generally denied release in circumstances comparable to those presented here."); *United States v. Ingram*, No. 14-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.").

[89] *See, e.g.*, *United States v. Jones*, No. 13-252, 2021 WL 1060218, at \*10 (W.D. Pa. Mar. 18, 2021) (being sole caregiver for an incapacitated parent may constitute extraordinary and compelling reason to reduce a sentence but finding the defendant failed to show incapacitation or lack of any other available caregiver).

[90] ECF Doc. No. 82 at 2.

[91] 18 U.S.C. § 3582(c)(1)(A).

[92] *United States v. Iezzi*, No. 17-157, 2021 WL 5832767, at \*6 (W.D. Pa. Dec. 9, 2021) (further citation omitted).

[93] "The court, in determining the particular sentence to be imposed shall consider . . .the need for the sentenced imposed [ ] (A) to reflect the seriousness of the offense, to promote respect for the law, and to prove punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant' and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . [.]" 18 U.S.C. § 3553(a)(2)(A)–(D).

[94] ECF Doc. No. 82 at 2.

[95] ECF Doc. No. 80.

[96] 18 U.S.C. § 3553(a)(2)(A)–(D); *United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) ("Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.").

[97] *See United States v. Aguibi*, 858 F. App'x 485, 486, n.2 (3d Cir. 2021) (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011)) ("the Bureau of Prisons has the sole authority to place a prisoner in home confinement."); *Washington v. Warden Canaan USP*, 858 F. App'x 35, 36 (3d Cir. 2021) ("[W]hether to transfer an inmate to home confinement is a decision within the exclusive discretion of the [Bureau of Prisons]."); *United States v. Milchin*, No. 17-284, 2022 WL 196279, at \*1, n.1 (E.D. Pa. Jan. 21, 2022) ("[T]he Court cannot order the Bureau of Prisons to transfer [an incarcerated individual] to home confinement. Only the Director of the Bureau of Prisons has the authority to grant such a request.").